# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 98-2503

_____

|  |  |  |
|---|---|---|
| Martin Lindstedt, | * | |
| | * | |
| Appellant, | * | |
| | * | |
| v. | * | Appeal from the United States |
| | * | District Court for the |
| Missouri Libertarian Party; Rebecca | * | Western District of Missouri |
| M. Cook; James Givens; State of | * | |
| Missouri, | * | [TO BE PUBLISHED] |
| | * | |
| Appellees. | * | |

_____

Submitted:  October 30, 1998

Filed:  November 18, 1998

_____

Before McMILLIAN, RICHARD S. ARNOLD, and MORRIS SHEPPARD
       ARNOLD, Circuit Judges.

_____

PER CURIAM.

Martin Lindstedt appeals from the final order entered in the District Court[1] for the Western District of Missouri granting summary judgment in favor of the Missouri Libertarian Party (Libertarian Party) and the State of Missouri and the Secretary of

---

[1]The Honorable D. Brook Bartlett, Chief Judge, United States District Court for the Western District of Missouri.

State, Rebecca Cook (the State defendants). For the reasons discussed below, we affirm the judgment of the district court.

Lindstedt alleged that the Libertarian Party refused to waive or refund the $200 filing fee required for a place on the 1996 gubernatorial primary ballot, tried to prevent him from running, and later passed and implemented a "bill of attainder" in an attempt to remove him from his positions within the Libertarian Party, in violation of 42 U.S.C. §§ 1983 and 1985(3). Lindstedt further alleged that the Secretary of State's office refused to file his candidacy for governor because he had not paid the filing fee provided for in Mo. Rev. Stat. § 115.357 (1994); Lindstedt later obtained a loan, paid the $200 filing fee, and was allowed to file. Lindstedt sought a ruling on the constitutionality of § 115.357. The district court granted the Libertarian Party's and the State defendants' separate motions for summary judgment.

We review a grant of summary judgment de novo. See Dulany v. Carnahan, 132 F.3d 1234, 1237 (8th Cir. 1997) (standard of review). To succeed in his § 1983 claims, Lindstedt had to show the Libertarian Party's actions were taken under color of state law, resulting in a deprivation of rights secured by the Constitution or federal law. See Brouhard v. Lee, 125 F.3d 656, 659 (8th Cir. 1997). We conclude that Lindstedt did not point to any facts showing the Libertarian Party was acting under color of state law when it refused to refund his $200 or when it acted to expel him from his positions within the Libertarian Party. See Johnson v. Knowles, 113 F.3d 1114, 1120 (9th Cir.) (county Republican Central Committee was not government actor because nothing tied state to particular decision to expel two members because of their sexual orientation), cert. denied, 118 S. Ct. 559 (1997); Banchy v. Republican Party, 898 F.2d 1192, 1195 (6th Cir. 1990) (party did not act under color of state law in precluding members from voting in internal election for ward chairman). We also conclude that Lindstedt failed to show that some racial or other class-based invidiously discriminatory animus lay behind the Libertarian Party's decision to expel him from the organization and to refuse to refund his filing fee. See 42 U.S.C. § 1985(3); Bray v. Alexandria Women's Health

Clinic, 506 U.S. 263, 268 (1993); Larson ex rel. Larson v. Miller, 76 F.3d 1446, 1454 (8th Cir. 1996) (en banc) (elements of § 1985(3) action).

Under Missouri law, a person who cannot pay the $200 fee to be a candidate for governor may have the fee waived by filing a declaration of inability to pay and a petition signed by the number of registered voters in the state equal to at least one-half of one percent of the total number of votes cast in the state for governor at the last election. See Mo. Rev. Stat. § 115.357.1-3 (1994). After reviewing the Missouri statute, we believe it provides a constitutionally adequate alternative means of ballot access to indigent candidates who cannot pay filing fees, without acting as an unreasonable barrier to an indigent's right to run for office. See Lubin v. Panish, 415 U.S. 709, 718 (1974); cf. Green v. Mortham, 155 F.3d 1332, 1337-38 (11th Cir. 1998) (petition requiring signatures of 3% (4,077 voters) of registered voters in congressional district to appear on party primary ballot was reasonable); Andress v. Reed, 880 F.2d 239, 240, 242 (9th Cir. 1989) (upholding as reasonable requirement that candidate obtain 10,000 signatures before being placed on ballot for office of U.S. Senator on Democratic ticket).

Accordingly, we affirm the judgment of the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.